**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Hunter,<br><br>        Plaintiff,<br><br>v.<br><br>TForce Freight Incorporated,<br><br>        Defendant. | No. CV-26-00122-PHX-KML<br><br>**ORDER** |

Plaintiff Charles Hunter is attempting to sue his former employer, defendant TForce Freight Inc., for a variety of federal and state claims. Hunter's latest complaint, like an earlier one, does not state any claim for relief. Hunter is given a final opportunity to amend.

## BACKGROUND

This case began with Hunter filing an unsigned complaint. (Doc. 1.) The court ordered him to file a signed version of the complaint, which he failed to do, and the case was closed. (Docs. 6, 8.) Hunter then sought to reopen the case, claiming there had been confusion regarding his mailing address. (Doc. 9.) The court granted that request and again ordered Hunter to file a signed complaint. (Doc. 10.)

On February 13, 2026, Hunter filed a signed complaint. (Doc. 12.) That complaint alleged claims for sex discrimination and retaliation under Title VII, wrongful termination, breach of a collective bargaining agreement, and a "pattern or practice of unlawful employment practices." (Doc. 12 at 1-2.) The court dismissed that complaint because it did "not contain any factual allegations explaining what happened, who was involved, or why

Hunter believes he was treated differently because of sex discrimination or retaliation," nor any facts regarding "the relevant provisions of the CBA he believes were violated." (Doc. 17 at 2-3.) The court granted Hunter leave to amend but warned he needed to "provide significantly more details regarding what happened to him, the other employees who were involved, and why he believes the actions relevant to his claims were taken because of his sex, in retaliation for his prior actions, or contrary to the CBA." (Doc. 17 at 3.)

As permitted by the court's order, on March 2, 2026, Hunter filed an amended complaint. (Doc. 19.) A few days later, Hunter filed another amended complaint. (Doc. 20.) The court treats that latest complaint filed on March 4, 2026, as Hunter's amendment as of right. Fed. R. Civ. P. 15(a)(1)(A). On March 6, 2026, Hunter filed yet another amended complaint. (Doc. 21.) Because Hunter's March 4 complaint is deemed his amendment as of right, all amendments after that filing may occur only "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Hunter did not obtain TForce's written consent or leave of court, so his March 6, 2026, complaint is stricken as unauthorized. The following analysis focuses exclusively on the March 4 complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (amended complaint supersedes earlier).

According to the operative complaint, Hunter "is a member of protected classes based on race (Black) and sex/sexual orientation (gay male)." (Doc. 20 at 1.) While working for TForce in Arizona, Hunter "was denied promotional opportunities despite seniority and qualifications." (Doc. 20 at 1.) Hunter does not identify what opportunities he is referencing. After Hunter complained to "management and Human Resources," he "was accused of theft or criminal conduct." (Doc. 20 at 1.) Hunter does not identify who he spoke with or when this occurred. Hunter also alleges he was "subjected to harassment and a hostile work environment, including taunting by co-workers." (Doc. 20 at 1.) But again, Hunter does not provide specifics regarding this harassment or why his work environment would qualify as hostile. At some point, "[a] manager physically attacked [Hunter] and [Hunter] was denied proper medical assistance." (Doc. 20 at 1.) Hunter does not explain if this physical attack is linked to his discrimination claims. All of these events

appear to predate December 2022 because Hunter alleges that month he "was laid off or terminated allegedly for lack of work, while less senior forklift operators were retained." (Doc. 20 at 1.)

In February 2025, TForce rehired Hunter. Hoping "to escape the prior discriminatory treatment experienced in Arizona," Hunter transferred to work at a location in Colorado, but the "same pattern of harassment, targeting, and retaliatory treatment" continued. (Doc. 20 at 1.) Hunter apparently complained again, on unidentified dates, but "HR investigations . . . found no wrongdoing." (Doc. 20 at 1.) At some point Hunter was terminated.

Hunter asserts claims for race discrimination, sex discrimination, retaliation, and hostile work environment under Title VII.[1] Hunter also asserts claims for wrongful termination and defamation under Arizona law. (Doc. 20 at 2). Although his latest complaint provides slightly more information than the previous one the court analyzed, Hunter still has not stated any claim for relief.

## ANALYSIS

Because Hunter is proceeding in forma pauperis, the court must consider whether his complaint states any claims on which he might be able to obtain relief. 28 U.S.C. § 1915(e)(1). This requires the complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

---

[1] Hunter also cites 42 U.S.C. § 1981 as a basis for his race discrimination claim. Section 1981 claims are analyzed under "the same legal principles as those applicable in a Title VII disparate treatment case." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (simplified). The court therefore analyzes the Title VII and § 1981 claims together.

- 3 -

experience and common sense." *Id.* at 679.

Beginning with Hunter's claims for race and sex discrimination under Title VII, a prima facie case of such discrimination requires the plaintiff show: (1) he belongs to a class of persons protected by Title VII; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated him differently than a similarly-situated employee who does not belong to the same protected class.[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Hunter alleges he belongs to a protected class, but he does not provide sufficiently clear allegations to establish any of the remaining requirements. Hunter does not allege he was performing adequately, and he does not clearly identify the adverse employment action he suffered. That is, Hunter may believe the adverse action was the "pattern of harassment" or he may believe it was his termination. He might also be attempting to identify both as actionable. The complaint simply does not make this clear.

In addition to failing to identify the adverse action at issue, Hunter also fails to identify any other similarly-situated employee he believes was treated differently. Nor has Hunter alleged any other facts indicating he was treated differently because of his race or sex. Overall, Hunter has not provided sufficient background facts for the court to conclude he may have been the victim of discrimination. His race and sex discrimination claims are dismissed.

Hunter's next claim is for retaliation under Title VII. To state such a claim, Hunter must allege (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093–94 (9th Cir. 2008). Hunter alleges he "complained to management and Human Resources regarding

---

[2] The requirement of establishing a prima facie case is an "evidentiary standard" and not a "pleading requirement[]." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Thus, a complaint cannot be dismissed merely because it does not contain facts establishing all the requirements of a prima facie case. *See Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019). That said, a plaintiff's complaint must still include "sufficient, nonconclusory allegations plausibly linking the [adverse] action to discrimination" or retaliation. *Id.* at 1138 (applying this standard in the Title IX context).

discrimination and unequal treatment," but he does not provide any specifics about when those complaints occurred. (Doc. 20 at 1.) At some unidentified time after those complaints, Hunter was subject to "harassment, targeting, and retaliatory treatment" but he does not provide any facts explaining what that treatment involved. Of particular importance, Hunter does not provide any explanation why he believes his subsequent treatment was because of his earlier protected activity. Without allegations linking the protected activity to later events, Hunter has not stated a plausible retaliation claim. This claim is dismissed.

Hunter then alleges a claim for wrongful termination. Arizona law "strictly limits the claims available to an employee alleging wrongful termination." *Peterson v. City of Surprise*, 418 P.3d 1020, 1025 (Ariz. Ct. App. 2018). Such a claim may be brought only when "(1) a discharge is in violation of an employment contract; (2) a discharge violates an Arizona statute; or (3) a discharge is in retaliation for the employee's assertion of certain rights protected by state law." *Guernsey v. Elko Wire Rope Inc.*, No. CV-21-00848-PHX-DJH, 2023 WL 5348567, at *2 (D. Ariz. Aug. 21, 2023). Hunter does not provide factual allegations establishing any of these possibilities. He does not identify any employment contract, he does not identify an Arizona statute violated by his termination, and he does not allege he was terminated in retaliation for complaints regarding violations of state law. The wrongful termination claim is dismissed.

Hunter's final claim is for defamation. Such a claim requires allegations the speaker "publishes a false and defamatory communication" when the speaker "(a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them." *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. Ct. App. 2007) (simplified). Hunter identifies the relevant statement as one that accused him of "theft or criminal conduct." (Doc. 20 at 1.) But he does not provide any meaningful additional details, such as the identity of the speaker, how the statement was published, or why that speaker knew the statement was false. Perhaps most importantly, Hunter appears to place the statement as occurring prior to 2022. If that is when the statement was made,

any defamation claim would be barred by the one-year statute of limitations. A.R.S. § 12-541(1). Without adequate factual allegations and likely barred by the statute of limitations, the current defamation claim is dismissed.

Hunter has not provided sufficient factual allegations to state any claim, but he may be able to add sufficient additional allegations. Hunter therefore is granted leave to file one—and only one—amended complaint. If he chooses to file an amended complaint, Hunter must explain what happened, who was involved, and why he believes certain actions were based on his race, sex, or previous protected activity. Hunter must also identify how his termination qualifies as actionable under the limited circumstances Arizona law recognizes for a viable wrongful termination claim. And he must identify when the defamatory statement was made, who made it, and how it was conveyed to a third party.

Finally, some of Hunter's filings suggest he may be using generative artificial intelligence ("generative AI").[3] The court has a general policy that requires any party that uses generative AI in connection with filings to attach to the subject filing a separate declaration disclosing the use of generative AI and certifying that the filer, in the exercise of the filer's independent judgment, has personally reviewed and verified the content of the filing as accurate and in compliance with Federal Rule of Civil Procedure 11. The declaration must identify which, if any, portion of the filing incorporates Generative AI outputs. Any party who presents to the court a pleading, written motion, or other paper incorporating inaccurate or undeclared generative AI outputs, including but not limited to inaccurate or non-existent case citations, may be subject to sanctions including dismissal without further warning. In preparing his amended complaint, Hunter must comply with the court's procedures regarding generative AI.

Accordingly,

**IT IS ORDERED** the amended complaint (Doc. 20) is **DISMISSED WITH**

---

[3] "Generative AI" as used in this order refers to large language models that accept user input and generate new content. Generative AI includes, but is not limited to, the tools available through ChatGPT, Claude, Copilot, DeepSeek, Google Gemini, and Grok.

**LEAVE TO AMEND**. No later than **March 25, 2026**, plaintiff shall file an amended complaint. The Clerk of Court is directed to enter a judgment of dismissal with prejudice in the event no amended complaint is filed by that date.

**IT IS FURTHER ORDERED** the Clerk of Court shall **STRIKE** the unauthorized complaint (Doc. 21).

Dated this 10th day of March, 2026.

Krissa M. Lanham

**Honorable Krissa M. Lanham**
**United States District Judge**